NOT FOR PUBLICATION

**FILED**
JAMES J. WALDRON, CLERK
**SEPTEMBER 25, 2015**
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Juan Filgueiras, DEPUTY

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| In re:<br><br>HYOJA AKIKO MOORE,<br><br>                                        Debtor. | Case No.:      15-10174 VFP<br><br>Chapter       7<br><br>Hearing date:   July 21, 2015<br><br>Judge:          Vincent F. Papalia |

## **OPINION**

HYOJA AKIKO MOORE
*Debtor Pro Se*
122 Edison Road
Sparta, NJ   07871

POWERS KIRN, LLC
William M.E. Powers III, Esq.
Angela C. Pattison, Esq.
*Attorneys for Wells Fargo Bank, N.A.*
728 Marne Highway, Ste. 200
Moorestown, NJ   08057

ERIC R. PERKINS, ESQ.
*Trustee*
McElroy, Deutsch, Mulvaney & Carpenter
40 West Ridgewood Avenue
Ridgewood, NJ   07450

**HONORABLE VINCENT F. PAPALIA**

## I. PRELIMINARY STATEMENT

These matters come before the Court on the motion of Ms. Hyoja Akiko Moore, Debtor *pro se* (the "Debtor"), for reconsideration of the Bankruptcy Court's March 27, 2015 *Order Denying Debtor's Motion (1) to Compel Powers Kirn LLC to Prove That It Represents Wells Fargo Bank, N.A. and (2) to Hold Powers Kirn LLC in Violation of the Stay under 11 U.S.C. § 362(k)* (the "March 27, 2015 Order"); on the Debtor's various motions and applications for related relief, as specified below; and on the Debtor's objection to the Trustee's Notices of Abandonment. Scheduled for hearing before the Court on July 21, 2015 were:

(1) Debtor's motion for reconsideration of the Bankruptcy Court's March 27, 2015 *Order Denying Debtor's Motion (1) to Compel Powers Kirn LLC to Prove That It Represents Wells Fargo Bank, N.A. and (2) to Hold Powers Kirn LLC in Violation of the Stay under 11 U.S.C. § 362(k)* (the "March 27, 2015 Order"). This motion includes a request for the Court to make additional findings of fact and conclusions of law with respect to the March 27, 2015 Order, repeated at Dkt. 57, below [Dkt. 45, filed April 8, 2015].

(2) Debtor's motion for the Court to make additional findings of fact and conclusions of law with respect to the March 27, 2015 Order [Dkt. 57, filed May 11, 2015].

(3) Debtor's request to pay in installments the $298 fee to file an appeal [Dkt. 52, filed April 27, 2015].

(4) Debtor's motion for an extension of time to file the motion for reconsideration [Dkts. 53, filed April 27, 2015].

(5) Debtor's motion to strike the responses filed by Powers Kirn LLC in response to the motion which generated the March 27, 2015 Order [Dkt. 62, filed May 12, 2015].

(6) Debtor's amended notice of motion for an extension of time to file the motion for reconsideration [Dkt. 65, filed May 4, 2015].

(7) Debtor's objection to Trustee's Notices of Abandonment of 122 Edison Road, Sparta, NJ [Trustee's Notice Dkt. 78] and 1815 Canyon Drive, Pinole, CA [Trustee's Notice Dkt. 79] [Debtor's objection Dkts. 85 and 86].

Powers Kirn, LLC (the "Law Firm"), on behalf of Wells Fargo Bank, N.A. (the "Bank") filed

responses at Docket Nos. 51 and 70. Debtor filed responses at Docket Nos. 74, 77 (a scheduling request) and 82.

## II. JURISDICTIONAL STATEMENT

The court has jurisdiction over these matters under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on October 17, 2013. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this court under 28 U.S.C. § 1408. The court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.[1]

## III. ORGANIZATION OF OUTCOMES

The following resolves (1) Debtor's motion for reconsideration at Docket No. 45; (2) Debtor's motion for the Court to make additional findings of fact and conclusions of law as to the Reconsideration Motion (Dkts. 45 and 57); and (3) Debtor's objection to the Trustee's Notices of Abandonment. Because the Debtor's motion for reconsideration was timely filed, as described below, Debtor's applications for extension of time (Dkts. 53 and 65) are moot but have been read and considered to the extent that their content supplements or relates to the motion for reconsideration. Debtor's motion at Docket No. 62 to strike the Law Firm's response at Docket No. 32 to her first motion is denied in substantial part, though some modified relief is granted, as set forth below (and has also been read and considered to the extent that its content supplements or relates to the motion for reconsideration). Debtor's application to pay in installments her filing fee for the appeal is moot (Dkt. 52), as the Debtor's appeal has been dismissed without prejudice pending resolution of this Reconsideration Motion. The Debtor may renew this application to the District Court if and when her appeal is filed. Debtor's motion for the Court to make additional

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

3

findings of fact and conclusions of law under Fed. R. Bankr. P. 7052 is granted in that this Opinion constitutes the Court's findings of fact and conclusions of law (Dkt. 57). Debtor's objection to the Trustee's Notices of Abandonment of real property was overruled for the reasons set forth below.

### IV.   DEBTOR'S REQUESTS FOR A TRANSLATOR

The Debtor has twice asked the Court to provide a Japanese translator. On May 11, 2015 the Debtor sent the Court a letter requesting a Japanese translator for the next hearing at the Court's expense (Dkt. 58). Chambers responded in a May 19, 2015 letter (not docketed) which set forth the policy that the Court does not provide such services and advised that the Debtor was permitted to engage a qualified translator of her choice at her expense. The letter also included a list of available translators.

On July 1, 2015 the Debtor renewed her request, stating that she could not afford to pay a translator and asked in the alternative if she could bring a friend to serve as translator (Dkt. 86). The Debtor was again advised by letter from the Clerk's Office dated July 15, 2015 (Dkt. 88) and e-mailed to the Debtor that the Court does not provide translation services. The July 15, 2015 letter further advised the Debtor that she may bring a friend who can be duly sworn to act as her translator and that the hearings would go forward on July 21, 2015 regardless of whether the Debtor brought a friend (or anyone else) to translate (Dkt. 88, July 15, 2015 letter). The Debtor did not bring any translator to the July 21, 2015 hearing.

### V.   STATEMENT OF FACTS AND PROCEDURE THROUGH ENTRY OF MARCH 27, 2015 ORDER

The Debtor filed the instant Chapter 7 petition on January 6, 2015. This is her first bankruptcy case. On January 7, 2015 the Court entered an Order which granted Debtor's application to waive the $335 filing fee. Debtor is unemployed and receives $793/month from

Social Security ("SSI," Dkt. 15, Schedule H).

Debtor scheduled two real properties, 122 Edison Road, Sparta, New Jersey (the "Sparta residence") and 1815 Canyon Drive, Pinole, California. The Sparta residence is the subject of the Debtor's dispute with the Bank and the Law Firm. The petition stayed a January 7, 2015 sheriff's sale scheduled for the Sparta residence (Dkt. 23, Exhibit, January 7, 2015 letter from the Law Firm). On June 6, 2015, Trustee, Eric R. Perkins, filed a Report of No Distribution and Notice of Abandonment as to both properties. The Notice of Abandonment for the Sparta residence listed a value of $538,000 and a mortgage of $702,821 due the Bank.[2]

On February 17, 2015 the Debtor filed a *Motion to Require Powers Kirn LLC to Produce Proof of Authorization to Represent Wells Fargo Bank N.A. before This Court* and to hold Powers Kirn in violation of the stay under 11 U.S.C. § 362(k) (Dkt. 23).[3] The bases for this application were: (1) a January 7, 2015 letter from the Law Firm adjourning the sheriff's sale from January 7, 2015 to April 8, 2015 in light of the bankruptcy; and (2) a September 4, 2010 letter from the Law Firm to the Debtor under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "Act") advising that the Bank had retained the Law Firm to pursue legal action and advising the Debtor of her rights under the Act. Both letters are attached to the Debtor's motion.

The Debtor alleged that the Law Firm: (1) violated the stay by rescheduling the sheriff's sale; (2) committed "criminal fraud" upon the Debtor and lacked "personal and subject matter jurisdiction"; (3) violated the Act; (4) committed fraud on the Court (by not being properly

---

[2] Between and among Schedules A, C and D, Debtor scheduled the Sparta residence with a value of $536,000 but did not schedule the Bank's mortgage, inserting the legend "proof of fraud" on "A" and declaring on "D" that there is no secured debt (Dkt. 15). The Debtor made similar entries for the Pinole property, scheduling a value of $428,000, "proof of fraud" in lieu of a mortgage and reporting on "D" that there is no mortgage against the property. She ultimately reported both mortgagees' claims as disputed priority debt on "E" and scheduled about $22,000 in general unsecured debt, all disputed (Dkt. 17).

[3] The Debtor on January 20, 2015 filed a *Request for Denial of Power's Kirn LLC "Request for Notice"* (Dkt. 13) in response to the Law Firm's *Notice of Appearance* filed on January 8, 2015 (Dkt. 9). This "request" by Debtor was not treated as a motion and is subsumed in any event into the February 17, 2015 Motion.

authorized to represent the Bank); and (5) was a "known foreclosure mill" (Dkt. 23, pp. 1-2). The Law Firm filed a brief responding on the merits (addressed below) and to some extent in kind. The Law Firm charged the Debtor as a "co-conspirator in the unauthorized practice of law" under N.J.S.A. § 2C:21-22 for not disclosing who assisted her with her papers and as a "sovereign citizen" and "paper terrorist" (terms used by the Acting Administrative Director of the New Jersey Courts following an FBI report to describe litigants who do not recognize government authority but clog the courts with frivolous and excessive filings) (Dkt. 32, pp. 4-5). The Law Firm argued that any petition preparer which Debtor might have used was not in compliance with the Code and with bankruptcy crime statutes. 11 U.S.C. § 110; 18 U.S.C. §§ 156 and 157 (Dkt. 32, pp. 5-6). The Debtor filed a reply which reiterated her demand that the Law Firm produce its retainer agreement, as well as the statutory and non-statutory authority under which it operated (Dkt. 37). The Court did not consider the Debtor's criminal fraud and foreclosure mill allegations as relevant or necessary to decide the Debtor's initial motion and similarly did not consider relevant or necessary the Bank's co-conspirator in the unauthorized practice of law, sovereign citizen or paper terrorist arguments. Instead, the Court decided the Debtor's original motion on the merits and will decide these motions on the same bases.

The Court heard oral argument on March 24, 2015 (Dkt 56, Transcript of March 24, 2015 hearing) (the "Transcript"). The Law Firm appeared by telephone through William Powers with the permission of the Court.[4]

As noted, the Court ignored the *ad hominem* attacks by both parties and ruled on the merits

---

[4] The Debtor also argued that she wished to see a formal signature on documents from the Law Firm. However, as an electronic filer, the Law Firm is permitted to place "/s/" signature on its documents consistent with the Administrative Procedures now authorized by and incorporated into D.N.J. LBR 5005-1 (Dkt. 56, Tr. 3:6-21). *See* former D.N.J. LBR 5005-1 ("Filing and transmittal of papers"), Appendix, *Administrative Procedures for Filing, Signing and Verifying Documents by Electronic Means*, II. Electronic Filing and Service of Documents, ¶ C. Signatures (in effect until the local rule modification effective August 1, 2015). This electronic signature provision is now in D.N.J. LBR 5005-1(b)(3).

of the Debtor's original motion. The Court ruled that the Law Firm was not required to produce its retainer agreement, or other proof of its authorization to represent the Bank in this case. The authority for this ruling includes *Osborn v. Bank of the U.S.*, 22 U.S. 738, 829-30 (1824); *Simbraw, Inc. v. U.S.*, 367 F.2d 373, 374 (3d Cir. 1966) ("Certain gentlemen [attorneys], first licensed by government, are admitted by order of Court, to stand at the bar, with a general capacity to represent all the suitors in the Court. *The appearance of any one of these gentlemen in a cause, has always been received as evidence of his authority; and no additional evidence, so far as we are informed, has ever been required.*" *Osborn*, 22 U.S. at 830) (emphasis supplied).

The Court also ruled that the Law Firm and the Bank did not violate the stay when they adjourned the sheriff's sale during the pendency of the bankruptcy case. The authority for this ruling is *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999) (the continuation of a sheriff's sale, on notice, during the pendency of a bankruptcy case does not violate the automatic stay because the creditor is required to obtain additional relief from the Court before actually conducting the sale). The Law Firm cited these cases among others in its responsive papers (Dkt. 32). The Debtor did not produce any authority to the contrary in her papers or during oral argument (Dkt. 56, Tr. 3:17-4:21; T6:23-T8:3). Toward the end of the colloquy, a non-attorney entered the courtroom purportedly to assist the Debtor, and the Court advised that a non-attorney could not represent the Debtor before the Court (Dkt. 56, Tr. 8:4-9:12).

After the Court made the first ruling against the Debtor (no basis for the Law Firm to produce proof of its authorization to represent Wells Fargo) and before the Court made the second ruling (no stay violation), the Debtor stated that she could not understand the proceedings, wanted an adjournment and walked away from the podium (Dkt. 56, Tr. 10:3-T12:5). The Court denied Debtor's request for an adjournment (made as the Court was issuing its ruling), because the Debtor

7

had been speaking and participating with apparent full understanding until the first adverse ruling (Dkt. T12:3-9). On March 27, 2015, the Court entered its own form of *Order Denying Debtor's Motion (1) to Compel Powers Kirn LLC to Prove That It Represents Wells Fargo Bank, N.A. and (2) to Hold Powers Kirn LLC in Violation of the Stay under 11 U.S.C. § 362(k)*, which denied with prejudice the relief requested by the Debtor (Dkt. 40) (the "March 27, 2015 Order"). That Order was docketed on March 27, 2015.

## VI. STATEMENT OF FACTS AND PROCEDURE FROM AND AFTER ENTRY OF THE MARCH 27, 2015 ORDER

From and after April 8, 2015 the Debtor filed the applications listed above. The docket in the bankruptcy case further reflects that on April 8, 2015, the same day on which Debtor filed the motion for reconsideration (Dkt. 45 above), Debtor filed a Notice of Appeal to the District Court of the March 27, 2015 Order. The docket for the District Court indicates that the appeal was docketed on May 12, 2015 under Civil Dkt. 2:15-cv-03292-MCA, that the designated record on appeal was docketed in District Court on May 19, 2015, that a briefing schedule was established and that the District Court would decide the matter on the papers on August 3, 2015. On July 10, 2015 the Debtor filed in District Court a "Notice" seeking continuance of the *bankruptcy matters* to August 4, 2015 (District Court Dkt. 4). However, as stated above, all scheduled applications and objections by the Debtor went forward in the Bankruptcy Court on July 21, 2015. The record and dockets do not reflect that the Debtor sought a stay of the March 27, 2015 Order in either Court. By Order entered on July 21, 2015, the District Court dismissed the Debtor's appeal without prejudice "pending disposition of [this] motion for reconsideration" and allowing Debtor to move to reopen the appeal after the motion for reconsideration is decided (District Court Dkt. 5).

## VII.    DEBTOR'S MOTION FOR RECONSIDERATION

A motion for reconsideration must be filed within fourteen days of the entry of the Order from which relief is sought. D.N.J. LBR 9013-1(h) (effective when Debtor filed her papers and at the time of the hearing). Debtor's motion for reconsideration filed on April 8, 2015, twelve days after entry of the March 27, 2015 Order, is timely. The motion must be accompanied by "a memorandum setting forth concisely the matters or controlling decisions which the movant believes constitute cause for reconsideration." D.N.J. LBR 9013-1(h). New Jersey Local Bankruptcy Rule 9013-1(h) states in full:

> A motion for reconsideration shall be filed within 14 days of the entry of the Court's order or judgment on the original motion. The motion shall be filed with a memorandum setting forth concisely the matters or controlling decisions which the movant believes constitute cause for reconsideration. A timely motion for reconsideration shall be deemed to be a motion under Fed. R. Bankr. P. 8002(b).

The Court grants a motion for reconsideration when the movant shows one of the following:

> (1) there is newly available evidence,
> (2) there is an intervening change in the controlling law; or,
> (3) there is a need to correct a clear error of law or prevent manifest injustice.

*In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 182 (Bankr. D.N.J. 2002) (quoted) (acknowledging that this is the Fed. R. Civ. P. 59(e) / Fed. R. Bankr. P. 9023 standard and citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995), a non-bankruptcy case). A bankruptcy court "has discretion to grant or deny a moving party's motion for reconsideration." *In re Christie*, 222 B.R. 64, 68 (Bankr. D.N.J. 1998) (internal citation omitted).

To satisfy her burden under D.N.J. LBR 9013-1(h) the movant must set forth "'concisely the matters or controlling decisions which the counsel believes the court has overlooked.'" *In re Christie*, 222 B.R. at 67 (quoting *Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.*, 825 F.

9

Supp. 1216, 1219 (D.N.J. 1993). A motion for reconsideration "cannot be used as a 'vehicle to reargue the motion or to present evidence which should have been raised before.'" *In re Christie*, 222 B.R. at 68 (quoting *Database*, 825 F. Supp. at 1220). It "should not provide the parties with an opportunity for a 'second bite at the apple.'" *Id.* at 67 (citing *Database*, 825 F. Supp. at 1220). The movant "must show more than 'mere disagreement with the court's decision and recapitulation of the cases and arguments considered by the court before rendering its original decision.'" *Id.* at 68 (quoting *Database*, 825 F. Supp. at 1220). The motion should not "be used to reargue positions previously made or to otherwise ask the court to rethink issues already considered." *In re Engel*, 190 B.R. 206, 211-12 (Bankr. D.N.J. 1995), *aff'd*, 124 F.3d 567 (3d Cir. 1997) (citing *Resorts Int'l v. Greate Bay Hotel & Casino*, 830 F. Supp. 826 (D.N.J. 1992)). Reconsideration "is an extraordinary remedy that should be used 'sparingly' and limited to exceptional circumstances." *In re Christie*, 222 B.R. at 68 (internal citations omitted).

Under D.N.J. LBR 9013-1(h) a timely filed motion for reconsideration qualifies as a motion under Fed. R. Bankr. P. 8002(b)(1) which extends the time for appeal until "the entry of the order disposing of the last such remaining motion." Fed. R. Bankr. P. 8002(b)(1). The motions enumerated at Fed. R. Bankr. P. 8002(b)(1) are (A) to make additional findings under R. 7052; (B) to alter or amend judgment under R. 9023; (C) to grant a new trial under R. 9023; (D) to grant relief under R. 9024 if that motion is made within fourteen days after entry of the judgment from which relief is sought. Fed. R. Bankr. P. 8002(b)(1)(A)-(D).

If the appellant files an appeal before an R. 8002(b)(1) motion is decided or where, as here, the appellant files the appeal and R. 8002(b)(1) motions simultaneously, the R. 8002(b) motions should be decided before the appeal goes forward. *In re Markowitz*, 190 F.3d 455, 460-61 (6th Cir. 1998). The pendency of the appeal does not "divest" the Bankruptcy Court of jurisdiction to

hear the R. 8002(b)(1) motions. Fed. R. Bankr. P. 8002(b)(2); *In re Smith Corona Corp.*, 212 B.R. 59, 60 (Bankr. D. Del. 1997). The appellant thereafter need file an amended notice of appeal only if she also seeks to appeal from the Order for reconsideration. Fed. R. Bankr. P. 8002(b)(3); *In re Mercado-Jimenez*, 193 B.R. 112, 116 (D.P.R. 1996). In any event, the appeal was dismissed, without prejudice, by the District Court on July 21, 2015, as noted above.

In her instant motion the Debtor has failed to iterate any of the cited bases for reconsideration of the March 27, 2015 Order:

(1) there is newly available evidence,
(2) there is an intervening change in the controlling law; or,
(3) there is a need to correct a clear error of law or prevent manifest injustice.

*In re Cent. Jersey Airport Servs., LLC*, 282 B.R. at 182 (quoted). The Debtor merely repeats, citing no new or other relevant authority that the Law Firm must produce its contract with the Bank in order to prove that the Law Firm has "standing" and is not representing itself (Dkt.45, p.5, ¶¶ 1, 5). The balance of the Debtor's statements and arguments are irrelevant, incorrect or inadequate to obtain modification of the March 27, 2015 Order. Those arguments include: (1) that the states cannot make laws prohibiting the unauthorized practice of law (Dkt. 45, p.4, ¶ 2); (2) that the Debtor did not like the proceedings on March 24, 2015 (p.3); (3) that a corporation "cannot sue a natural person," so that the Law Firm must produce the "natural person" which it represents in order to remain in the case (pp. 6-7). These arguments are deemed as without merit. There is no question that the States and our Supreme Court can and do make laws regulating the practice of law. *See, e.g.*, New Jersey Rules of Professional Conduct; N.J.S.A. § 2A:13-1 *et seq.* ("Attorneys, Counsellors and Bar Examiners"); N.J.S.A. § 2C:21-22 ("Unauthorized practice of law"). Similarly, there is no question that a corporation can sue a "natural person."

The Bank and Law Firm's response properly argued that Debtor did not meet her burden on

11

reconsideration (Dkt. 51). In reply, the Debtor persists in arguing that the Law Firm has not demonstrated its "standing" in this Court (Dkt. 74).[5] In this Court's view, Debtor's final submission overstates the impact of an error which the Law Firm made (and later corrected) in citing the *Osborn* case in its original objection at Dkt. 32. Specifically, the Law Firm omitted the following lines from the *Osborn* cite between the words, "attorney of another," and "The case of an attorney" on p.829:

> without the authority of that other. In ordinary cases, the authority must be produced, because there is, in the nature of things, no *prima facie* evidence that one man is in fact the attorney of another.

*Osborn*, 22 U.S. at 829. However, that omission which the Law Firm later corrected (at Dkt. 70, pp. 1-3) does not detract from the principal relevant ruling of *Osborn*; *i.e.*, that no additional evidence is required of an attorney-at-law to appear in a case on behalf of a client. In short, the substance of the *Osborn* ruling was not undermined by the citation error. Additionally, the Law Firm filed a "Request for Notice" on behalf of Wells Fargo within this case (Dkt. 9). This request is further evidence of the Law Firm's representation of Wells Fargo in this case. Additionally, because the Debtor took issue with the "Request for Notice," the Court suggested at the July 21 hearing that the Law Firm file a Notice of Appearance on behalf of Wells Fargo. The Law Firm did so on the next day, but soon thereafter withdrew that appearance and filed a second Notice of Appearance based on the Bankruptcy Court's new Local Form. (*See* Dkt. Nos. 89, 92 and 93.) The Debtor has now moved to strike those Notices of Appearance, with the hearing on that motion

---

[5] The foundation of Debtor's arguments grows increasingly obscure. In her reply, the Debtor cites the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "Act"), but the Debtor has not indicated whether or how she deems that the Law Firm violated the Act, nor has she identified the role which the Law Firm has taken under the Act (whether as client, debt collector or attorney) (Dkt. 74, pp. 2-6). The Debtor also makes uncited reference to a Medicare procedure which apparently requires an attorney to produce a retainer agreement for certain types of representation and argues that the Bankruptcy Court should "do no less" (Dkt. 74, p. 6). The Debtor did not make any substantive arguments, as on her Reconsideration Motion, as to the alleged stay violation by the Bank for rescheduling the sheriff's sale. As noted, that argument is without merit. *See Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999) (continuation of sheriff's sale during pendency of bankruptcy does not violate automatic stay).

scheduled for September 29, 2015. Thus, there is no basis to reconsider the Court's Order with regard to the Law Firm's authorization to represent Wells Fargo, nor has any been provided.

### VIII. THE MOTION TO STRIKE

The Debtor's separate motion at Docket No. 62 to strike the Law Firm's objection to the original motion (Dkt. 32) because the Law Firm (1) made typographical errors in a quotation from case law; and (2) made allegedly defamatory statements against the Debtor ("co-conspirator in the unauthorized practice of law," "sovereign citizen" and "paper terrorist") (Dkt. 62, p.4) has partial merit.

First, the typographical errors, as noted above, were harmless and have been corrected. As to the allegedly defamatory statements, 11 U.S.C. § 107(a) recognizes a presumption in favor of public access to court documents. 11 U.S.C. § 107(b)(2), as implemented by Fed. R. Bankr. P. 9018, allows the Court to "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2). Material qualifies for this protection if it "would cause a reasonable person to alter his opinion" of the affected party. *In re Gitto Global Corp.*, 422 F.3d 1, 14 (1st Cir. 2005). To meet that standard the party seeking protection is required to show either "(1) the material is untrue, or (2) the material is potentially untrue and irrelevant or included within a bankruptcy filing for an improper end." *In re Gitto Global*, 422 F.3d at 14. In her motion to strike at Docket No. 62, the Debtor has complained about the Law Firm's use of terms to which she objected. The Court, as stated at the outset, deemed these statements irrelevant and did not consider *ad hominem* comments by either party in the original or instant motion. Nonetheless, in the interest of equity, the Court will direct the Clerk's Office to suppress the original documents from both the Debtor and the Law Firm (Dkt. 32 and Dkt. 45) which contain the referenced statements against the adverse party and will generate

redacted, replacement documents for Docket Nos. 32 and 45 linked as a supplement to the original.

## IX. DEBTOR'S OBJECTION TO THE TRUSTEE'S NOTICES OF ABANDONMENT

By notices filed on June 2, 2015, the Trustee abandoned the two real properties which the Debtor scheduled on "A," 122 Edison Road, Sparta, New Jersey ("Sparta") and 1815 Canyon Drive, Pinole, California ("Pinole"). The Notices of Abandonment are docketed at Docket Nos. 78 and 79, respectively. Trustee reported the following value and debt for each property:

|  | **Sparta** | **Pinole** |
|---|---|---|
| Value | $538,000 | $387,500 |
| Debt | $702,821 Wells Fargo Bank, N.A. | $428,000 Aurora Loan Svcs. |

The values approximate or equal the values scheduled by the Debtor (who did not acknowledge the mortgages on the properties on her schedules).[6] The Notices of Abandonment were served by the Bankruptcy Noticing Center on June 5, 2015 via first class mail on the creditors furnished by the Debtor and on the Debtor herself. (Dkt. 80, BNC Certificate of Notice dated June 5, 2015 as to Sparta property; Dkt. 81, BNC Certificate of Notice dated June 5, 2015 as to Pinole property).

On June 17, 2015 the Debtor filed an objection which appears to argue:

(1) that the Trustee does not make clear to whom he is abandoning the properties;

(2) that the Trustee is acting prematurely because, if Debtor is correct in challenging the liens on the properties, then the properties will have value to the estate; and

(3) that, if the Trustee is abandoning the properties to the secured creditors, then the Trustee must do so by notice of motion.

---

[6] As previously stated in n.2 supra, between and among Schedules A, C and D, Debtor scheduled the Sparta residence with a value of $536,000 but did not schedule the Bank's mortgage, inserting the legend "proof of fraud" on "A" and declaring on "D" that there is no secured debt (Dkt. 15). The Debtor made similar entries for the California property, scheduling a value of $428,000, "proof of fraud" in lieu of a mortgage and reporting on "D" that there is no mortgage against the property. She ultimately reported both mortgagees' claims as disputed priority debt on "E" and scheduled about $22,000 in general unsecured debt, all disputed (Dkt. 17).

14

(Dkt. 85, Debtor's June 17, 2015 objection).

11 U.S.C. § 554(a) states in relevant part that the Trustee, *after notice and a hearing*, may abandon property that is of inconsequential value or burdensome to the estate:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

11 U.S.C. § 554(a).  Fed. R. Bankr. P. 6007(a) provides that the Trustee may abandon property on notice to the United States Trustee and creditors (other notice parties in the Rule are not relevant to this case), and D.N.J. LBR 6007-1 requires the Trustee to use the local form (as this Trustee did) with notice sent by the Clerk's Office (as occurred here).  *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1167 (4th Cir.), *cert den.*, 522 U.S. 950 (1997) ("Before a bankruptcy court may abandon property of the estate, 'the trustee must ascertain the property's fair market value and the amount and validity of the outstanding liens against the property'") (internal citations omitted).

"When the [T]rustee abandons property [of the estate], title reverts to the [D]ebtor as if no bankruptcy had been filed."  *In re Magee*, 444 B.R. 254, 260 (Bankr. S.D.N.Y. 2011).  The abandoned property remains subject to the existing liens.  *In re Quanta Resources Corp.*, 739 F.2d 912, 914 (3d Cir. 1984), *cert. den.*, 475 U.S. 1090 (1986).  *See also In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd*, 502 U.S. 410 (1992) (after abandonment, "'whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right'") (internal citation omitted).7

"The [T]rustee's power to abandon property is discretionary," and the Court will generally defer to the Trustee's judgment in determining whether to abandon a property.  *In re Slack*, 290

---

7 Thus, if title in the subject properties remains in the Debtor, the abandonment reverts title to the Debtor, who also apparently retains her possessory interest in at least the Sparta property.

15

B.R. 282, 284 (Bankr. D.N.J. 2003), *aff'd*, 112 Fed Appx. 868 (3d Cir. 2004). "The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority." *In re Slack*, 290 B.R. at 284 (internal citations omitted). The objecting party carries a significant burden to overcome the Trustee's judgment:

> Courts . . . place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion. The party opposing the abandonment must show some likely benefit to the estate, not mere speculation about possible scenarios in which there might be a benefit to the estate.

*In re Slack*, 290 B.R. at 284.

In the instant case, the Trustee's abandonment complied with the applicable rules of procedure as the abandonment was properly noticed. Substantively, the Court does not question the Trustee's determination to abandon the subject properties, based on the apparent lack of equity in those properties, notwithstanding the Debtor's unsupported and conclusory claims that the mortgages are somehow invalid. Further, this court does not question the Trustee's judgment to abandon the properties, rather than engage in costly and time-consuming litigation that would be needed to challenge the liens, particularly in a no-asset case such as this and where no substantial support is provided for the alleged challenge. In this regard, the Court notes that, according to Wells Fargo, the Debtor has not paid the mortgage on the Sparta property since February 22, 2010 (Dkt. 120, *Notice of Motion for an Order Vacating Automatic Stay as to Real Property* filed by the Bank and returnable on October 6, 2015, Exhibit B, Final Judgment, Certification of Proof of Amount Due and Schedule) (showing interest due from March 22, 2010 and the loan therefore contractually due from February 22, 2010)**.**

Accordingly, the abandonment is effective, subject to any valid and existing liens, and the Debtor's highly speculative and conclusory objections to the abandonment are overruled.

## X. CONCLUSION

For the reasons set forth above:

(1) Debtor's Motion at Docket No. 45 for reconsideration of the March 25, 2015 Order is DENIED, with prejudice;

(2) Debtor's motion at Docket Nos. 45 and 57 under Fed. R. Bankr. P. 7052 for additional findings of fact and conclusions of law with respect to the March 24, 2015 hearing which generated the March 27, 2015 Order is GRANTED as set forth herein;

(3) Debtor's application at Docket No. 52 to pay in installments her filing fee for the appeal is DENIED as moot because the District Court has dismissed the Debtor's appeal without prejudice, pending this Court's decision on the Reconsideration Motion. The Debtor may renew her application to the District Court if and when her appeal is filed.

(4) Debtor's applications at Docket Nos. 53 and 65 for extension of time are moot as the Debtor's motions for reconsideration and related relief were timely filed; and

(5) Debtor's Motion at Docket No. 62 to strike Powers Kirn's response (Docket No. 32) to her Original Motion (Docket No. 23) is GRANTED in part and DENIED in part as follows:

(a) The references in Powers Kirn's response to "co-conspirator in the unauthorized practice of law," "paper terrorist" and "sovereign citizen" and the related exhibits will be suppressed (Docket No. 32); and

(b) the references in the Debtor's Original Motion to a "foreclosure mill" and "criminal fraud" will be suppressed (Docket No. 23); and

(c) the Clerk's Office will suppress Docket Nos. 23 and 32, and the Court will file replacements redacting those references.

(6) Debtor's objection to the Trustee's Notices of Abandonment of the Sparta and Pinole properties is OVERRULED.  A separate Order authorizing the abandonment has been entered (Docket No. 95).

Dated: September 25, 2015                    /s/Vincent F. Papalia
                                                                             VINCENT F. PAPALIA
                                                                             United States Bankruptcy Judge